643 A.2d 130

**DUQUESNE LIGHT COMPANY, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.**

**DUQUESNE INTERRUPTIBLE COMPLAINANTS, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 1994.

Decided April 13, 1994.

Reargument Denied June 21, 1994.

Stephen R. Pelcher, for petitioner Duquesne Light Co.

John A. Levin, Asst. Counsel, for respondent.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

On June 14, 1991, a group known as the Duquesne Interruptible Complainants[1] (DIC) filed a formal complaint before the Pennsylvania Public Utility Commission (Commission) asking the Commission to find the then current $2.00/kw interruptible credit contained in the Duquesne Light Company's (Duquesne) Rate HVPS (High Voltage Power Service) and Rider No. 7 (Rate L Large Power Service) unjust and unreasonable, in violation of Section 1301 of the Public Utility Code,[2] 66 Pa.C.S. § 1301. The complaint also requested that the Commission find a just and reasonable interruptible service credit based upon a calculation producing a credit level approximately equal to fifty per cent of the applicable production demand cost per kilowatt (kW) for Rider No. 7 and Rate HVPS customers.[3]

The complaint averred that DIC members purchase substantial quantities of electricity from Duquesne pursuant to the rates, terms and conditions of Rider No. 7 and Rate HVPS, and that DIC members desire to continue to purchase substantial quantities of electricity from Duquesne if Rider No. 7 and Rate HVPS interruptible service credit levels are made just and reasonable.

The complaint cited the history of Duquesne's interruptible credit level where the $2.00/kW credit level for interruptible service contained in Rider No. 7 was originally established in January 1983 when the Rate GL (General Service Large) demand charge was $8.763/kW for the first 5,000 kW and $6.62/kW for all kW in excess of 5,000 kW. When Rate HVPS was added to Duquesne's tariff in 1988, the $2.00/kW interruptible service credit level was continued.

1. The Duquesne Interruptible Complainants is an *ad hoc* group of energy-intensive industrial consumers of electricity from Duquesne Light Company consisting of J & L Specialty Products Corporation, LTV Steel Company, Inc. and USX Corporation—U.S. Steel Group.

2. Act of July 1, 1978, P.L. 598, No. 116, *as amended,* 66 Pa.C.S. §§ 101–3315.

3. The Office of Consumer Advocate intervened in the proceeding before the Administrative Law Judge but has not filed a brief in this appeal.

The DIC complaint urged the Commission to consider a higher interruptible service credit in light of the marked increase in the frequency of notices of likely interruptions and actual interruptions.

The complaint also outlined a framework where increased interruptible service credit levels would bolster DIC member efforts in becoming more operationally competitive in the steelmaking marketplace, which was averred to be constantly threatened by out-of-state and foreign competition. The DIC complaint maintained that despite Duquesne's and the Commission's purported focus on new customer economic development, little, if any, effort has been made to examine existing customer needs in the context of the just and reasonable interruptible credit levels.

After a pre-hearing conference, submission of direct and rebuttal written statements by the parties and three days of hearings, Administrative Law Judge John H. Corbett, Jr. (ALJ) found DIC's proposed methodology for the calculation of the interruptible credit to be the "most logical and the best supported approach in the proceeding." (ALJ decision, October 14, 1992, p. 92). The ALJ agreed with DIC's use of a production demand factor in determining an appropriate interruptible credit and recommended the DIC methodology with its $5.89/kW interruptible service credit level be adopted by the Commission. (ALJ decision, October 14, 1992, pp. 91–92).

The Commission did not accept the ALJ's recommended decision. The Commission did, however, find that DIC was entitled to an increase in the interruptible service credit to $3.04/kW.[4]

Understandably, none of the parties was satisfied by the Commission's order and they have all petitioned for a review to this Court. Their respective positions[5] may be stated

4. This decision contained a minority statement that no increase was warranted.

5. The parties have provided this Court with the following statements of the questions involved.

Duquesne:

succinctly. Duquesne Light contends there should be no increase from the present $2.00/kW figure. DIC argues that this court should adopt the figure recommended by the ALJ— viz., $5.89/kW. The Commission urges that we affirm its order which sets the credit for interruptible service at $3.04/kW.

In this opinion, we shall discuss our standard of review and the relationship between the ALJ's recommendation and the Commission's findings and conclusion. We shall then review the reasoning stated in the Commission's decision and review the respective positions of the parties. Finally, we shall state our disposition of the petitions for review which are before the Court and the reasons for our disposition.

I. Is the adjudication of the Commission supported by substantial evidence in the record?

II. Does the adjudication contain adequate finding of facts and discussion to permit the Commonwealth Court to perform its judicial function?

III. Did the Commission violate § 332(h) of the Public Utility Code by failing to 'rule upon' the Exceptions filed by the Company to the Recommended Decision?

IV. Is the Recommended Decision supported by substantial evidence in the record?

DIC:

A. Did the Pennsylvania Public Utility Commission act arbitrarily and capriciously by ignoring the record evidence and the recommended decision of the administrative law judge and replacing it with an untested and unsubstantiated credit level?

B. Did the Pennsylvania Public Utility Commission commit reversible error by misunderstanding and misinterpreting the record evidence?

C. Did the Pennsylvania Public Utility Commission commit reversible error by imposing an unjust and unreasonable rate in violation of 66 Pa.C.S. Section 1301?

D. Did the Pennsylvania Public Utility Commission violate the constitutional procedural and substantive due process rights of the Duquesne Interruptible Complainants by not affording sufficient notice and opportunity to be heard on issues surrounding the Commission's new methodology?

In view of the conclusion we have reached we decide that it is unnecessary to address specifically each of these arguments.

*Standard of Review and Relationship Between the ALJ's Recommendations and the Commission's Findings*

This Court is required to affirm the order of the Commission if it is based upon substantial evidence and does not contain an error of law or offend a constitutional requirement. *Allegheny Ludlum Corp. v. Pennsylvania Public Utility Commission,* 149 Pa.Commonwealth Ct. 106, 612 A.2d 604 (1992). While the opinion of the ALJ is instructive, and often persuasive, the ALJ's weighing of the evidence is not binding on the Commission for the purpose of appellate review. It is for the Commission to gauge the sufficiency of evidence, and the Commission is not bound by the ALJ's weighing of the evidence or characterization of the argument. *Pennsylvania Retailers' Associations v. Pennsylvania Public Utility Commission,* 64 Pa.Commonwealth Ct. 491, 440 A.2d 1267 (1982).

*The Opinion and Order of the Commission*

Some background is necessary for an understanding of our holding in this appeal that the Commission's conclusion cannot be affirmed.

The ALJ filed an extremely comprehensive recommended decision. In his ninety-two page decision, he reviewed in detail the history of the case, the testimony, the contentions of the parties and his conclusions. His recommended decision in essence accepted DIC's arguments and the statements of its witnesses and rejected Duquesne's position.

When the Commission rendered its decision, the parties were advised for the first time in the proceeding that a "comprehensive cost of service study" was necessary before the Commission would impose a permanent rate for Duquesne's interruptible service credit. The Commission made no attempt to order such a study under the power granted to it, Section 504 of the Public Utility Code, 66 Pa.C.S. § 504,[6]

6. Section 504 provides:
   **Reports by public utilities**
   The commission may require any public utility to file periodical reports, at such times, and in such form, and of such content, as the commission may prescribe, and special reports concerning any mat-

either before making its decision or in the decision itself. Rather, as it appears to this Court, the Commission arbitrarily selected and imposed a rate of $3.04 pending the completion of a cost of service study.

The Commission's opinion may be summarized as follows. The Commission found that there was adequate evidence to substantiate the recommendation of the ALJ that the $2.00 interruptible service credit was unjust and unreasonable and must be increased. However, it refused to accept the recommendation that the interruptible service credit be increased to $5.89/kW. It then made its own conclusion that it would increase the rate to $3.04/kW. We quote the paragraph which provides this Court with the sole reasoning for the Commission's selection of $3.04 as the credit rate:

Nonetheless, the existence of the CEEP Report and the recommendations concerning the Respondent contained therein, as well as any effect on rates that an isolated adjustment of the magnitude of that proposed by the Complainants may have, *without* the benefit of a comprehensive cost of service study, causes us great concern. We note that the capacity charge for additional kilowatts of on-peak demand for Rate HVPS has increased approximately 52 percent since its 1987 introduction at $7.78/kW to its present $11.84/kW (excluding Rider A), while the interruptible service credit has remained at $2.00/kW. As a result, until such time as a comprehensive cost of service study has been performed that encompasses all rates, we will permit the credit to be increased *by a like percentage, or to a credit of $3.04/kW*. Once a cost of service study has been completed, further changes in the interruptible service credit, either up or down, may then be justifiable and appropriate.

(Commission decision, March 26, 1993, pp. 7–8, emphasis added).

ter whatsoever about which the commission is authorized to inquire, or to keep itself informed, or which it is required to enforce. The commission may require any public utility to file with it a copy of any report filed by such public utility with any Federal department or regulatory body. All reports shall be under oath or affirmation when required by the commission.

374

■ This Court cannot affirm the Commission's decision. The decision itself concludes that, without a comprehensive cost of service study, the Commission cannot ascertain the effect of any increase to $5.39/kW. Yet, without that study, the Commission uses the simplistic approach of relating the credit increase to the 52% increase in the HVPS on-peak demand charge in order to substantiate the increase of the interruptible credit rate to $3.04/kW.

Unfortunately, the problem of ascertaining the proper increase is not that simple. While such an increase on an interim basis may have the pragmatic effect of providing an impetus to Duquesne Light to act promptly and produce and provide a comprehensive cost of service report, this type of pragmatism [7] in rate setting has been rejected by this Court before because it frustrates our judicial review.

In *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 33 Pa.Commonwealth Ct. 403, 409, 381 A.2d 1337, 1340 (1978) this Court said:

In this case, however, we are frustrated in the performance of our judicial review of a PUC order which can only be remedied by remand. In an attempt to persuade us to pass upon the merits of these appeals, the PUC argues that we should give full recognition to the 'pragmatic adjustment' theory applied by Federal Courts in review or rate making body adjudications as expressed in Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591 (1944), and Federal Power Commission v. Natural Gas Pipeline Co. of America, 315 U.S. 575 (1942). This theory has never been adopted in Pennsylvania for the reason that the applicable statutory law pertaining to the right of a public utility to a fair rate of return upon a fair value, the role of the PUC to pass upon a rate application and to support its action with an adjudication meeting the standards of an administrative adjudication, and the role of a court in reviewing the same

7. The Commission does not characterize its ordered increase as pragmatic, but in view of its statement on how it reached the figure, we see the Commission's determination as nothing more than a "pragmatic adjustment."

does not permit pragmatism to play any role that it may play in Federal decisions under the Hope doctrine.

Although it is by no means *prima facie* fatal to the Commission's conclusion, for the Commission is not required to accept the recommendation of the ALJ or the parties, it is worthy of note that no one had contended that $3.04/kW was the just and reasonable rate that should be imposed, either absolutely or until a comprehensive cost of service study had been performed. The imposition of the $3.04/kW rate was, however, the result of a conclusion by the Commission not based on substantial evidence.

We have carefully examined the Commission's brief in vain for any reference to the record which would provide a legitimate evidentiary basis for the $3.04/kW rate, and consequently, for a method by which we could conduct a meaningful review. On the one hand, the Commission rejected the ALJ's adoption of DIC's pricing methodology; on the other, the Commission apparently did not accept Duquesne's proposition that the credit for interruptible service should be based on value, not costs, to the utility and that interruptible service has had no increase in value. Other than generalities regarding the Commission's duty to provide for a just and reasonable rate, and the undoubtedly correct statement that the Commission was not bound to accept the position of DIC, Duquesne *or* the ALJ, we find no explanation for the $3.04/kW determination. Neither the opinion nor findings of the Commission provide this Court with a sufficient basis for review. Thus, the imposition of the $3.04 rate cannot stand.

### Duquesne's Position of No Increase

■ We have examined the record, the AJL's findings and recommended decision and find substantial evidence to support the Commission's ultimate finding that the present rate of $2.00/kW is *not* just and reasonable. It is not necessary to set forth in detail this evidence in its entirety. However, for example, the Commission sets forth and adopts, as did the ALJ, the 1991 report of the Commission's Bureau of Conser-

vation, Economics and Energy Planning (CEEP Report) as follows:

8. The Commission's Bureau of Conservation, Economics and Energy Planning issued a report in May 1991 entitled 'Interruptible Load Analysis of Pennsylvania Electric Utilities' (CEEP Report).

9. The CEEP Report analyzed the explicit interruptible rate offerings of the seven major Pennsylvania electric utilities, noting the average interruptible credit for these electric companies amounts to $3.35/kW, while the highest credit offered is $5.40/kW.

10. The difference between the Duquesne's average demand charge and the amount of its interruptible credit represents the largest deviation between these two components of all seven major electric utilities in Pennsylvania.

11. The CEEP Report provides load analyses of the seven major Pennsylvania electric utilities and concludes Duquesne needs to improve its load profile; it suggests Duquesne may accomplish this objective by attracting more interruptible load through use of a higher interruptible credit.

(Commission decision, March 26, 1993, pp. 5–6).

Once that evidence is accepted and accompanied by other accepted testimony, we, as a reviewing court, cannot reject the Commission's conclusion that there must be some increase in the interruptible credit rate. Thus, we are not free to accept Duquesne's contention that the rate should remain at $2.00/kW.

### DIC's Contention that the Credit Rate of $5.39/kW Should be Reinstated

■ DIC, like Duquesne Light, is equally bound by the Commission's conclusion. The Commission accepted, based on evidence, the conclusion of the ALJ that the rate should be increased. However, the Commission rejected the ALJ's recommendation that the rate be increased to $5.39/kW, and concluded it could not accept such an increase without a

comprehensive cost of service study. In doing so, it also rejected the "embedded cost" pricing theory recommended by the ALJ, who essentially adopted the rate-setting methodology advanced by DIC's experts. That methodology entailed "updating" the previous 1988 cost of service study and arriving at a percentage (i.e., fifty percent) of Duquesne's production demand costs incurred to serve HVPS customers. Citing the record made before the ALJ, DIC states that its expert witness's "approach to develop a proposed interruptible credit based on 50% of production demand was clearly identified as a *starting point* for fair and appropriate interruptible credit development." (DIC principal brief, pp. 13–14, emphasis in original). DIC does not, however, point to any evidentiary support for the ALJ's acceptance of DIC's fifty percent allocation as the ultimately developed just and reasonable credit. In any case, the Commission did not adopt the ALJ's recommended decision in this respect.

The Commission, not the ALJ, is the ultimate factfinder in proceedings before it and must resolve conflicts in testimony as well as weigh the evidence presented. *Pennsylvania Electric v. Pennsylvania Public Utility Commission,* 81 Pa.Commonwealth Ct. 285, 473 A.2d 704 (1984). In exercising these functions here, the Commission did not adopt the ALJ's recommendation that DIC's proposed increase of the interruptible service credit to $5.39/kW be accepted as just and reasonable. This court, however, is not free to substitute our judgment for that of the Commission. *Allegheny Ludlum.* Thus, DIC's contention that we can order a credit increase to $5.39/kW must be rejected.

### Conclusion

In their excellent briefs, both DIC, at least by the implication of its argument that it was deprived of due process, and Duquesne explicitly, request a remand if this court does not accept the figures of $5.39 or $2.00/kW. As we have noted above, this Court concludes there is substantial evidence to support a finding that $2.00/kW is not just and reasonable, but there are no findings supported by evidence to conclude a rate

378

of $3.04/kW is just and reasonable. Thus, we do not accept either of these amounts and cannot conduct a meaningful review of the Commission's figure of $3.04/kW. Since it was not until the Commission level that a comprehensive cost of service study was deemed a necessity and, since on appeal Duquesne contends that such a study has no place in the determination of the correct figure for an interruptible service credit, we hold that it is only proper that all parties be given the opportunity to contest this finding by the Commission—by testimony if necessary.

If, after having considered evidence and arguments on the question of what is the appropriate approach to setting a just and reasonable credit level, the Commission remains of the conclusion that such a level cannot be set without a comprehensive cost of service study, it should state on what evidence it bases that conclusion. In that event, we then do no more than suggest the Commission also order such a study at that time, in order that the issue presented in this case can be expeditiously and definitively answered.

On remand, we leave it to the Commission's discretion to ascertain the best method to provide this Court with specific factual and legal conclusions so that we can conduct a meaningful review within our well established standards of review.

## ORDER

AND NOW, this 13th day of April, 1994, the order of the Pennsylvania Public utility Commission, No. C–00913424, entered March 26, 1993, is hereby vacated and the case is remanded to the Commission for further proceedings not inconsistent with the foregoing opinion.

Jurisdiction relinquished.